# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF IOWA
# WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　Plaintiff,<br><br>vs.<br><br>KEVON SPRATT,<br><br>　　　　Defendant. | No. CR23-4011-LTS<br><br>**ORDER ON REPORT AND RECOMMENDATION** |

## I.　INTRODUCTION

This matter is before me on a Report and Recommendation (R&R) in which the Honorable Kelly K.E. Mahoney, Chief United States Magistrate Judge, recommends that I deny defendant's motion (Doc. 33) to suppress evidence seized from his vehicle on November 14, 2022. Doc. 65. Spratt has filed objections (Doc. 72) and the Government has filed a response (Doc. 73).

## II.　APPLICABLE STANDARDS

A district judge must review a magistrate judge's R&R under the following standards:

> Within fourteen days after being served with a copy, any party may serve and file written objections to such proposed findings and recommendations as provided by rules of court. A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge may also receive further evidence or recommit the matter to the magistrate judge with instructions.

28 U.S.C. § 636(b)(1); *see also* Fed. R. Crim. P. 59(b).  Thus, when a party objects to any portion of an R&R, the district judge must undertake a de novo review of that portion.

Any portions of an R&R to which no objections have been made must be reviewed under at least a "clearly erroneous" standard.  *See, e.g.*, *Grinder v. Gammon*, 73 F.3d 793, 795 (8th Cir. 1996) (noting that when no objections are filed "[the district court judge] would only have to review the findings of the magistrate judge for clear error").  As the Supreme Court has explained, "[a] finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed."  *Anderson v. City of Bessemer City*, 470 U.S. 564, 573 (1985) (quoting *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948)).  However, a district judge may elect to review an R&R under a more-exacting standard even if no objections are filed:

> Any party that desires plenary consideration by the Article III judge of any issue need only ask.  Moreover, while the statute does not require the judge to review an issue *de novo* if no objections are filed, it does not preclude further review by the district judge, sua sponte or at the request of a party, under a *de novo* or any other standard.

*Thomas v. Arn*, 474 U.S. 140, 150 (1985).

### III.  DISCUSSION

#### A.  *Factual Objection*[1]

Spratt objects to a factual finding that the description of the Salix attempted bank robbery suspect was a "slender, black male."  He notes this finding was based on Detective Michael Sitzman's testimony that "[t]he caller identified [the robbery suspect] as a slender build black male wearing all dark clothing."  Doc. 59 at 14.  However, he explains that Deputy Frederick Beckman with the Woodbury County Sheriff's Office was

---

[1] The relevant facts and background are summarized by Judge Mahoney in the R&R.  *See* Doc. 65 at 2-9.  I will discuss them to the extent they are relevant to Spratt's objections.

2

Case 5:23-cr-04011-LTS-KEM   Document 78   Filed 08/03/23   Page 2 of 10

the one who spoke with the bank clerk who had provided the description. *Id.* at 26. Beckman testified the clerk identified the suspect as a "black male dressed in all black, approximately five foot nine" and "135 to 140 pounds." *Id.* at 27. Beckman broadcast the description over the radio to law enforcement. *Id.* at 28. In his report, Beckman noted the clerk stated the suspect was a "taller black male, she estimated him to be 5'9" and weighing about 135 to 145 pounds . . . ." Doc. 34-1. Spratt is six feet one inch tall and 160 pounds. He objects to the finding that the suspect was a "slender, black male" because, while Sitzman may classify five feet nine inches and 135 to 140 pounds as a slender build, the information received by law enforcement was the more precise five feet nine inches and 135 to 140 or 145 pounds.

This objection is overruled. There are at least two possibilities to explain the discrepancy between the bank clerk's description and Sitzman's testimony. First, Sitzman's testimony was based on a description by the "caller." It is unclear whether the bank clerk who encountered the suspect was the one who made the initial call to law enforcement to report the attempted robbery. Second, while Spratt has demonstrated that the information provided to Beckman was more precise than a "slender, black male" he has not demonstrated anywhere in the record that Beckman used that same precision when broadcasting the suspect's description to law enforcement. Beckman may have described the suspect as a "slender build black male" as Sitzman testified.

Indeed, Beckman's testimony indicates he had some apprehension about the bank clerk's description, noting that she had used her hand to estimate the suspect's height compared to hers. He estimated that she was approximately five feet seven inches tall and noted that she indicated with her hand that the suspect was approximately four to six inches taller, which would put him past the five feet nine inches she had estimated and closer to Spratt's actual height of six feet one inch. *Id.* at 28. Beckman may have also described the suspect as "slender" to law enforcement rather than using the clerk's estimate of his weight. Other officers also recalled a more general description provided by dispatch. *See id.* at 35 (Brent Rosendahl, Assistant Chief of Police with the Sergeant

3

Bluff Police Department, recalled the description of the suspect being a "black male and dark clothing"); *id.* at 60 (Travis Hutzell, police officer with the Sergeant Bluff Police Department, testified the information he received was that the suspect was a "black male"); *id.* at 74-75 (Patrick Tisher with the Sioux City Police Department, testified he was aware a black male was the suspect in the Salix attempted robbery).

For these reasons, this factual finding is not a misstatement of the record. This objection is overruled.

### B.     *Legal Objection*

Spratt objects to the legal conclusion that the officers had probable cause to stop his vehicle and to arrest him and search his vehicle. He notes this conclusion was based on: (1) the three prior robberies and information about those robberies, (2) information that the Salix robbery also involved a black male with a tall, slender build as the suspect, (3) the fact that Spratt's vehicle was located 11 to 12 miles away from the bank, heading northbound toward Sioux City within 20 minutes of the attempted robbery and (4) Spratt's suspicious driving. The R&R also cited *United States v. Jones*, 535 F.3d 886 (8th Cir. 2008), which Spratt argues has more supportive facts than those presented here. Spratt contends there was little to connect him to the attempted bank robbery in Salix, noting law enforcement had a specific height and weight description that did not match Spratt, except for the fact that he is a Black male. While the robbery suspect had been described as wearing all dark clothing, law enforcement did not verify Spratt was in dark clothing before performing the stop. The witness also made no mention of a distinct gold barreled handgun used by the suspect, which is the weapon that had been described in the previous robberies. There was also no description of which way the suspect had left or what vehicle he was traveling in. Unlike in *Jones*, law enforcement had also not trailed the suspect from the Salix area. For these reasons, Spratt argues officers lacked probable cause to seize Spratt and his vehicle.

4

The Fourth Amendment protects against unreasonable searches and seizures. U.S. Const. amend. IV. A traffic stop constitutes a seizure and is reasonable under the Fourth Amendment "if it is supported by either probable cause or an articulable and reasonable suspicion that a traffic violation has occurred." *United States v. Herrera-Gonzalez*, 474 F.3d 1105, 1109 (8th Cir. 2007). "Probable cause . . . is not a high bar: It requires only the kind of fair probability on which reasonable and prudent people, not legal technicians act." *Kaley v. United States*, 571 U.S. 320, 338 (2014) (cleaned up). "Law enforcement officers are afforded 'substantial latitude in interpreting and drawing inferences from factual circumstances.'" *Bell v. Neukirch*, 979 F.3d 594, 603 (8th Cir. 2020) (quoting *Kuehl v. Burtis*, 173 F.3d 646, 650 (8th Cir. 1999)). Probable cause to stop a vehicle "may be based on the collective knowledge of all law enforcement officers involved in the investigation and need not be based solely upon information within knowledge of the officer[s] on the scene if there is some degree of communication." *United States v. Rowe*, 878 F.3d 623, 628 (8th Cir. 2017).

Here, the evidence established that the tri-state area began experiencing multiple burglaries in fall 2022. On October 24, 2022, the Sioux City Police Department sent an email to its officers and the Woodbury County Sheriff's Department[2] noting that there had been two recent convenience store robberies. The suspect for both robberies was believed to be the same person based on still shots of video and was described as a "dark skinned male with a tattoo on his left hand." Doc. 50-1. The email also noted the suspect displayed a black semi-automatic weapon with a gold ejection port. *Id.* A third robbery had occurred that morning at a Check Into Cash, but no video evidence was obtained at that time. The suspect was described as wearing all dark clothing with his face covered. *Id.*

---

[2] Sitzman testified this email had also been sent to the Sergeant Bluff Police Department and other agencies in the area. Doc. 59 at 12.

On October 25, 2022, Sitzman, with the Sioux City Police Department, was investigating the Check Into Cash robbery. Doc. 59 at 6. He showed a video and still shots of the vehicle and suspect to another officer. *Id.* That officer provided the name of Kevon Spratt and advised that he drove a vehicle similar to the one in the video. *Id.* at 7. Sitzman began investigating Spratt and identified his vehicle and license plate. On October 25, 2022, the Sioux City Police Department sent another email to the same group stating that the same person was believed to be the suspect in all three robberies. The email provided the same description of the suspect, his clothing and the weapon. Doc. 50-4.

On or about November 8 or 9, Sitzman began drafting a search warrant for Spratt and his vehicle. Doc. 59 at 8. On November 11, Sitzman sent an email to the Sioux City Police Department[3] identifying Spratt as a suspect in the Check Into Cash robbery. He identified his vehicle (a silver 2008 Toyota Camry Solara with a black rag top) and license plate number. Doc. 50-2. He noted that Spratt was also the suspect in a robbery that had occurred that day in Jefferson, South Dakota. He indicated that officers had located Spratt's vehicle but did not yet have a physical address for him and wanted to obtain that information before taking further action. Nonetheless, he stated he felt he had enough information for charges at that time. *Id.*

On November 14, 2022, an attempted bank robbery took place in Salix, Iowa. The witness identified the suspect as a "black male dressed in all black, approximately five foot nine" and "135 to 140 pounds." Doc. 59 at 27. Beckman, with the Woodbury County Sheriff's Office, broadcast information about the suspect to the "Woodbury County ops" which he identified as his coworkers, all of Woodbury County and the communications center. *Id.* at 28. Beckman had received the bulletin regarding the other robberies in the area and knew the suspect in those robberies was "a black man, skinny, not sure on the height, was brandishing a gun often and had a gold or copper-plated

---

[3] This email was not sent to other agencies at that time. Doc. 59 at 9.

ejection port." Doc. 59 at 30. He also knew the vehicle of interest was a silver vehicle with a black top. *Id*

Rosendahl, with the Sergeant Bluff Police Department, received information via dispatch describing the suspect vehicle and a description of the suspect as a black male in dark clothing. *Id.* at 35, 37. He had also received the emails from the Sioux City Police Department concerning the robberies in the area and knew either from those emails or a tri-state intelligence network briefing that the vehicle suspected in those robberies matched the vehicle that was captured on video in the Sergeant Bluff robbery. *Id.* at 36-37. He was advised through dispatch to look for a silver car with a black top, which was consistent with the vehicle that had been described as involved in the other robberies. *Id.* at 37-39. He also received the license plate number. *Id*. Rosendahl was the first one to spot the suspect vehicle and observed him make what he considered an improper turn. Rosendahl was in a low-profile pickup and did not have his lights activated as he continued following the vehicle. *Id.* at 35, 41. However, multiple marked police vehicles soon followed him with at least one[4] having its lights activated when the suspect vehicle came to a stop.

Boetger, with the Woodbury County Sheriff's Office, testified that deputies provided a brief description of the suspect involved in the Salix attempted bank robbery. *Id.* at 49. Shortly thereafter, other agencies, including the Sioux City Police Department, began giving out intelligence information about Spratt, his vehicle and license plate. *Id.* at 49, 52. Hutzell, with the Sergeant Bluff Police Department, testified he received information that law enforcement was looking for a silver vehicle with a black top in connection with the Salix attempted bank robbery. *Id.* at 59. He was also aware from previous bulletins that a Black male and a silver vehicle with a black top were suspected

---

[4] Douglas Boetger with the Woodbury County Sheriff's Office testified that a vehicle with the Sioux City Police Department had its lights on. Doc. 59 at 51. He identified Tisher as the driver of this vehicle. *Id.* at 52-53.

7

Case 5:23-cr-04011-LTS-KEM   Document 78   Filed 08/03/23   Page 7 of 10

of being involved in previous robberies in the area. *Id.* at 60.  Finally, Tisher, with the Sioux City Police Department, stated that another officer with his department was communicating the information from previous bulletins, including the suspect's name and vehicle description, with all units. *Id.* at 67.

The discrepancy between the bank clerk's description and Spratt's actual height and weight is of little consequence because officers had been dispatched to look for Spratt's vehicle with a specific license plate number, not just a person of a particular height or build.  The witness's description of the suspect as a Black male, who could be described as generally tall and slender based on the estimated height and weight provided by the witness, was sufficient to suspect Spratt of the Salix attempted bank robbery based on previous intelligence connecting him with other recent robberies in the area.  Even if the physical description was not entirely accurate, it did not rule out Spratt as a possible suspect such that officers would not have had probable cause to stop him.  The fact that Spratt was actually a few inches taller and a few pounds heavier than estimated by the bank clerk is not sufficient to destroy probable cause. *See Pasiewicz v. Lake County Forest Preserve Dist.*, 270 F.3d 520, 522 (7th Cir. 2001) (probable cause existed to arrest suspect who bore "fair resemblance" but "did not match exactly" to witnesses' descriptions of age, height, weight and hairstyle).

Based on the collective knowledge of law enforcement involved in the investigation of the November 14, 2022 attempted bank robbery in Salix, there was probable cause to seize Spratt and his vehicle.  The Sioux City Police Department suspected Spratt of at least three previous robberies based on witness descriptions of the suspect as well as video that showed the suspect and his vehicle.  Indeed, Sitzman testified he was in the process of drafting a search warrant for Spratt's vehicle and person when the November 14 attempted robbery occurred.  Sitzman also believed law enforcement had sufficient information to charge Spratt at that time, *see* Doc. 50-2, but wanted to locate his residence so they could obtain a search warrant for it, as well.  *See* Doc. 59 at 9.

8

While the information concerning Spratt and his vehicle was initially shared only with the Sioux City Police Department, on November 11, this information (including Spratt's identity, vehicle and license plate number) was shared with the larger law enforcement community following the attempted robbery in Salix on November 14. Thus, all officers in the region were looking for a silver car with a black rag top, bearing a specific license plate number, heading away from Salix. *See* Doc. 59 at 35, 37-38 (Rosendahl, with the Sergeant Bluff Police Department, testified that dispatch provided a description of the suspect vehicle and license plate number); 49 (Boetger, with the Woodbury County Sheriff's Office, testified the Sioux City Police Department was providing intelligence information on Spratt, including his vehicle and license plate number); 60, 62 (Hutzell, with the Sergeant Bluff Police Department, testified they were following a silver vehicle with a black top driven by a Black male based on previous bulletins they had received and radio communications).

The temporal and physical proximity of Spratt's vehicle to Salix provided further reason to believe that Spratt was involved in the Salix attempted bank robbery and further supported probable cause for the stop. For these reasons, Spratt's objection to the probable cause finding is overruled.

## IV. CONCLUSION

For the reasons set forth herein:

1. Spratt's objections (Doc. 72) to the Report and Recommendation (Doc. 65) are **overruled**;

2. I **accept** the Report and Recommendation (Doc. 65) without modification, *see* 28 U.S.C. § 636(b)(1);

3. Pursuant to Judge Mahoney's recommendation, Spratt's motion (Doc. 33) to suppress evidence is **denied**.

9

**IT IS SO ORDERED.**

**DATED** this 3rd day of August, 2023.

_____
Leonard T. Strand, Chief Judge